## UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

    v.

DAVID REIP, DENNIS NOSTRANT, and MARCUS LABAT

      Defendants.

CASE NO**: 26-10594**

### EMERGENCY MOTION UNDER FEDERAL RULE OF APPELLATE PROCEDURE 9(a) TO MODIFY CONDITIONS OF RELEASE

Appellants David Reip, Dennis Nostrant, and Marcus Labat respectfully move this Court under Federal Rule of Appellate Procedure 9(a) to modify the district court's order prohibiting them from attending services at the House of Prayer Christian Churches ("HOPCC"), or alternatively to vacate the order and remand with instructions that the district court conduct an evidentiary hearing on less restrictive alternatives.

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ............................................................ 5, 7, 15

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ....................................................... 3, 4, 6, 18

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ......................................................... 14

*Davila v. Gladden*,
777 F.3d 1198 (11th Cir. 2015) .......................................... 3, 5, 8, 10, 13

*Employment Division v. Smith*,
494 U.S. 872 (1990) .......................................................... 8

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) .......................................................... 14

*Gonzales v. O Centro Espírita Beneficente União do Vegetal*,
546 U.S. 418 (2006) ....................................................... 6, 8, 11, 16

*Holt v. Hobbs*,
574 U.S. 352 (2015) ....................................................... 4, 5, 9, 12, 16

*Otto v. City of Boca Raton*,

981 F.3d 854, 866-868 (11th Cir. 2020)……………………………21

*United States v. Grady*,
18 F.4th 1275 (11th Cir. 2021) .......................................... 3, 5, 8, 10, 13

*United States v. Playboy Entertainment Group, In*c.,
529 U.S. 803 (2000) ............................................................ 4, 9, 15

Statutes

18 U.S.C. § 3142(c)(1)(B) ............................................................ 8, 17, 21, 24

18 U.S.C. § 3145(a)(2) .............................................................................. 6

18 U.S.C. § 3145(c) ................................................................................... 5

42 U.S.C. § 2000bb(b) ........................................................................... 12

42 U.S.C. § 2000bb-1(b) ...................................................... 4, 11, 14, 23

Constitutional Provisions

U.S. Const. Amend. I .............................................................. 19

Rules

Fed. R. App. P. 9(a) ..................................................................... 1, 5, 22

Fed. R. App. P. 27(d)(2) .......................................................... 26

Fed. R. App. P. 32(a)(5)–(6) ................................................... 26

Fed. R. App. P. 32(f) .............................................................. 26

Other Authorities

Oct. 15, 2025 Hearing Transcript .................................................... 9, 15, 21

Gov't Response to RFRA Motion (Doc. 113) ................................. 4, 13

Motion to Amend Conditions of Release (Doc. 147) .............. 6, 17

Order on Conditions of Release (Doc. 123) ................................ 3, 15

Order Denying Motion to Amend (Doc. 154) ............................ 3, 14

Notice of Appeal (Doc. 157) .......................................................... 3, 6

# **INTRODUCTION**

This appeal concerns whether a federal court may impose a blanket prohibition on religious worship without evidence that such a restriction is necessary.

Appellants David Reip, Dennis Nostrant, and Marcus Labat are on pretrial release under court-ordered conditions of supervision. Their notice of appeal confirms that this appeal is taken by those three defendants from the district court's February 11, 2026 order denying amendment of the challenged release condition. *See* Notice of Appeal at 1–2, Doc. 157. That order left in place a restriction barring them from attending services and other events at the House of Prayer Christian Churches ("HOPCC"), while permitting only remote viewing of services. *See* Order on Conditions of Release at 6–8, Doc. 123; Order Denying Mot. to Amend at 2–4, Doc. 154.

The Religious Freedom Restoration Act ("RFRA") governs this dispute. Once a claimant shows that federal action substantially burdens sincere religious exercise, the burden shifts to the government to demonstrate that the challenged restriction is "the least restrictive means" of furthering a compelling governmental interest. 42 U.S.C. § 2000bb-1(b); *United States v. Grady*, 18 F.4th 1275, 1285 (11th Cir. 2021); *Davila v. Gladden*, 777 F.3d 1198, 1205–06 (11th Cir. 2015). Here, the government expressly conceded below that Appellants' beliefs are sincere and that the prohibition on church attendance substantially burdens their religious exercise, leaving only the least-restrictive-means question in dispute. *See* Gov't Resp. to RFRA Mot. at 8–9, Doc. 113. Once the government conceded that the condition substantially burdens Appellants' religious exercise, RFRA required the government—not the defendants—to prove with evidence that a categorical

prohibition on church attendance was the least restrictive means of protecting its interests.

That concession should have narrowed the inquiry to one question: whether the government could prove, with evidence, that less restrictive alternatives would fail. But that did not occur. No probation officer testified. No investigator testified. No witness described the structure of HOPCC services, the feasibility of supervision, or why narrower conditions could not adequately protect potential witnesses. Instead, the government relied on speculation that sermons might influence congregants who could potentially be witnesses, and the district court accepted that speculation without an evidentiary record. (Doc. 154)

Strict scrutiny cannot be satisfied through conjecture. RFRA's least-restrictive-means requirement is "exceptionally demanding," and the government must show that it "lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014). The Supreme Court has also made clear that when a plausible less restrictive alternative exists, the government must prove that the alternative would be ineffective. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822 (2000); *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

Yet the district court resolved strict scrutiny without evidence and then denied Appellants' request for a hearing on alternatives. *See* Order Denying Mot. to Amend at 3–4, Doc. 154.

This Court should grant relief under Rule 9(a). The challenged condition burdens ongoing religious exercise every week it remains in force. At minimum, the order should be vacated and remanded with instructions that the district court conduct an

evidentiary hearing. But because the government presented no proof that narrower conditions would fail, this Court may also modify the condition directly and permit attendance at HOPCC services subject to reasonable safeguards.

The need for relief is immediate. The challenged condition prevents Appellants from attending weekly religious services at their church while this appeal is pending.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 18 U.S.C. § 3145(c) and Federal Rule of Appellate Procedure 9(a) to review and modify conditions of pretrial release imposed by the district court.

Appellants David Reip, Dennis Nostrant, and Marcus Labat are defendants in a pending criminal prosecution in the United States District Court for the Southern District of Georgia, Case No. 1:25-cr-00062-JRH-BKE, and are currently released pending trial subject to court-ordered conditions of supervision.

On November 25, 2025, the district court entered an order modifying the conditions of release to prohibit Appellants from attending services or activities associated with HOPCC, while permitting only remote viewing of services. *See* Order on Conditions of Release, Doc. 123.

Appellants later moved to amend the conditions of release under 18 U.S.C. § 3145(a)(2) and requested an evidentiary hearing regarding less restrictive alternatives. *See* Mot. to Amend Conditions of Release, Doc. 147.

On February 11, 2026, the district court denied that motion and declined to conduct an evidentiary hearing, concluding that "a hearing is unnecessary because the record developed in connection with Condition 7(g) is sufficient." *See* Order Denying Mot. to Amend at 2, Doc. 154.

On February 24, 2026, Appellants filed a Notice of Appeal from that order. *See* Notice of Appeal, Doc. 157.

This Court therefore has jurisdiction to review and modify the challenged conditions of release under Rule 9(a).

## STANDARD OF REVIEW

Under Fed. R. App. P. 9(a), this Court independently reviews the legality of conditions imposed as part of pretrial release and may modify them directly when the record shows that the district court misapplied the governing legal standards.

Conditions of release must comply with both the Bail Reform Act ("BRA") and any applicable constitutional or statutory protections. The BRA requires courts to impose "the least restrictive further condition, or combination of conditions," that will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(c)(1)(B).

Where conditions of release substantially burden religious exercise, RFRA imposes an additional and more demanding standard. Once a claimant demonstrates that a government action substantially burdens sincere religious exercise, "the burden shifts to the government to demonstrate that the challenged action satisfies strict scrutiny." *Grady*, 18 F.4th at 1285; *Davila*, 777 F.3d at 1205–06.

Strict scrutiny under RFRA is "exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728. The government must show that it lacks any alternative means of achieving its compelling interest without imposing the burden on religious exercise. *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015). When a plausible less restrictive alternative exists, the government must demonstrate that the alternative would be ineffective. *Playboy*, 529 U.S. at 822.

Because the government bears the burden under RFRA, courts may not uphold restrictions on religious exercise based on speculation or conjecture. Instead, the government must present evidence demonstrating that the restriction imposed is necessary and that less restrictive alternatives would fail. *Holt*, 574 U.S. at 364–65; *Ashcroft*, 542 U.S. at 666.

Where the district court resolves the least-restrictive-means inquiry without an evidentiary record and without requiring the government to carry its burden of proof, reversal or modification under Rule 9(a) is appropriate.

## STATEMENT OF THE CASE

This case arises from a condition of pretrial release prohibiting Appellants from attending religious services at their church, the House of Prayer Christian Churches ("HOPCC"). The restriction was imposed despite the government's concession that it substantially burdens Appellants' religious exercise and despite the absence of any evidentiary record demonstrating that such a prohibition is necessary.

### A. The Indictment and Allegations

The indictment alleges that certain leaders associated with HOPCC engaged in financial crimes involving church-affiliated entities. *See* Indictment ¶¶ 4–21. The

alleged conduct concerns financial transactions involving entities connected to the church. The indictment does not allege that attending religious services constitutes criminal conduct or that communal worship itself threatens the integrity of judicial proceedings.

Nonetheless, the government argued during bond proceedings that members of the church community could potentially be witnesses and that Appellants' attendance at services might indirectly influence those individuals. *See* Hr'g Tr. at 3–5 (Oct. 15, 2025).

**B. Initial Conditions of Release**

Following their arrests, Appellants were released pending trial subject to standard conditions of supervision, including restrictions prohibiting contact with potential witnesses. These conditions reflect the Bail Reform Act's requirement that courts impose "the least restrictive condition or combination of conditions" necessary to protect the integrity of the proceedings. 18 U.S.C. § 3142(c)(1)(B).

**C. The Government's Theory Regarding Church Attendance**

During later bond proceedings, the government argued that permitting Appellants to attend church services could allow indirect influence over congregants who might later serve as witnesses. The government did not identify specific individuals who might be influenced or present evidence that attendance at services had resulted in witness intimidation. Instead, it argued that sermons or religious messaging could potentially influence members of the congregation.

## D. The October 15 Hearing

At the October 15, 2025 hearing, the government suggested that sermons might discourage cooperation with law enforcement and could imply that "for all practical purposes the federal government is the spawn of Satan and no one should cooperate." Hr'g Tr. at 4. The magistrate court likewise suggested that sermons discussing themes such as loyalty could influence church members who might later serve as witnesses. *Id.* at 5.

These statements formed the central basis for the government's argument that Appellants should be prohibited from attending services. No evidence was presented to support these assertions.

## E. Absence of an Evidentiary Record

No witnesses testified at the hearing. No probation officer addressed whether attendance at services could be monitored. No testimony described the structure of church services or evaluated the feasibility of safeguards such as supervised attendance or restricted interaction with congregants. No declarations were submitted explaining why such measures would be ineffective. *See generally* Hr'g Tr. (Oct. 15, 2025).

Thus, the record contained no evidence demonstrating that the government's concerns could not be addressed through less restrictive means.

## F. The Magistrate Judge's Order

Despite the absence of evidence, the magistrate judge imposed a blanket prohibition preventing Appellants from attending religious services at HOPCC. *See*

Doc. 123. The restriction barred Appellants from participating in communal worship at their church. *Id.*

## G. The RFRA Motion

Appellants moved to modify the conditions of release under the Religious Freedom Restoration Act. *See* Doc. 105. They argued that the prohibition substantially burdened their religious exercise and that RFRA required the government to demonstrate that the restriction was the least restrictive means of furthering a compelling interest. *Id.* The government responded and conceded that the prohibition substantially burdens religious exercise. *See* Doc. 113.

## H. Motion to Amend and Request for Hearing

Appellants later moved to amend the release conditions and specifically requested an evidentiary hearing. *See* Doc. 147. They explained that they intended to present evidence demonstrating that less restrictive alternatives could protect potential witnesses, including monitored attendance, designated seating arrangements, restrictions on interaction with congregants, probation supervision, and reinforced no-contact protocols. *Id.*

These measures would have allowed Appellants to attend religious services while preserving the government's interest in preventing witness interference.

## I. The District Court's Order

The district court denied the motion and concluded that a hearing was unnecessary because the existing record was sufficient. *See* Doc. 154. The court therefore upheld the prohibition as the least restrictive means of protecting potential

witnesses despite the absence of evidence regarding the feasibility of alternative safeguards. *Id.*

This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court imposed a blanket prohibition preventing Appellants from attending religious services at HOPCC while they remain on pretrial release. That restriction substantially burdens Appellants' exercise of religion, and the government conceded as much below. Once that concession was made, RFRA placed the burden squarely on the government to demonstrate that the prohibition was the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000bb-1(b); *Grady*, 18 F.4th at 1285; *Davila*, 777 F.3d at 1205–06.

RFRA's least-restrictive-means test is "exceptionally demanding." *Hobby Lobby*, 573 U.S. at 728; *Holt*, 574 U.S. at 364–65; *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 429–30 (2006). The government must demonstrate that it lacks any alternative means of achieving its objectives without imposing the substantial burden on religious exercise. *Holt*, 574 U.S. at 364–65. When plausible alternatives exist, the government must prove that those alternatives would be ineffective. *Playboy*, 529 U.S. at 822; *Ashcroft*, 542 U.S. at 666.

The government made no such showing here. No probation officer testified that church attendance could not be supervised. No investigator testified that narrower restrictions would be ineffective. No witness addressed the structure of church

services or the feasibility of safeguards designed to prevent contact with potential witnesses. *See generally* Hr'g Tr. (Oct. 15, 2025).

Instead, the government relied on speculation that sermons might influence congregants who could potentially become witnesses. *Id.* at 4–5.

The district court nevertheless upheld the restriction and later refused Appellants' request for an evidentiary hearing. By resolving the least-restrictive-means inquiry without evidence—and by denying Appellants the opportunity to develop the record—the court relieved the government of the burden RFRA places upon it. *See* Doc. 154.

The order also conflicts with the Bail Reform Act. Pretrial conditions must be the least restrictive measures necessary to protect the government's interests. 18 U.S.C. § 3142(c)(1)(B). Yet the district court imposed the most restrictive option available: a categorical prohibition on attending religious services at Appellants' church. It did so without evaluating whether tailored safeguards—such as monitored attendance, seating restrictions, or strengthened no-contact conditions— could adequately address the government's concerns.

This Court should grant relief under Rule 9(a). At minimum, the order should be vacated and the case remanded with instructions that the district court conduct an evidentiary hearing on less restrictive alternatives. But because the government presented no evidence demonstrating that narrower conditions would fail, this Court may also modify the release conditions directly and permit Appellants to attend HOPCC services subject to reasonable safeguards.

ARGUMENT

**I. RFRA Imposes an Exceptionally Demanding Burden on the Government, and the District Court Resolved That Inquiry Without an Evidentiary Record.**

The Religious Freedom Restoration Act ("RFRA") provides that the federal government may not substantially burden a person's exercise of religion unless it demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Once a substantial burden on sincere religious exercise is established, the burden shifts to the government. *United States v. Grady*, 18 F.4th 1275, 1285 (11th Cir. 2021); *Davila v. Gladden*, 777 F.3d 1198, 1205–06 (11th Cir. 2015).

Congress enacted RFRA to restore the compelling-interest test that governed Free Exercise claims before *Employment Division v. Smith*, 494 U.S. 872 (1990), and to require courts to apply that test whenever federal action substantially burdens religious exercise. *See* 42 U.S.C. § 2000bb(b)(1). RFRA therefore imposes an extraordinarily demanding standard. The Supreme Court has repeatedly said so. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014). The government must show that it "lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion." *Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015).

That inquiry is not categorical or abstract. RFRA requires a focused, claimant-specific analysis. In *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, the Court rejected the government's reliance on broad policy concerns and held that RFRA requires a case-specific inquiry into whether denying the particular

claimant's religious exercise is necessary. 546 U.S. 418, 430–32 (2006). The government must justify denying the exemption sought in the specific circumstances before the court. *Id.*

The same principles govern here. The government expressly conceded below that Appellants' religious exercise is sincere and that the prohibition on attending HOPCC services substantially burdens that exercise. *See* Gov't Resp. to RFRA Mot. at 8–9, Doc. 113. That left only one issue: whether the government could prove that a blanket prohibition on church attendance was the least restrictive means of protecting potential witnesses and the orderly administration of justice. *See id.* Under RFRA, the burden on that question rested entirely with the government. *Grady*, 18 F.4th at 1285; *Davila*, 777 F.3d at 1205–06.

But the "record" consisted primarily of attorney argument and speculative concerns about the content and possible effect of sermons. At the October 15 hearing, the government suggested that sermons might imply that "for all practical purposes the federal government is the spawn of Satan and no one should cooperate." Hr'g Tr. at 4 (Oct. 15, 2025). The court likewise expressed concern that even a sermon about "loyalty" could influence members of the congregation. *Id.* at 5. Those concerns may have been sincerely held, but they were not evidence. No probation officer testified. No investigator testified. No witness described the structure of HOPCC services, the practical feasibility of supervision, or why narrower safeguards would not work. *See generally id.*

That is fatal under RFRA. Strict scrutiny cannot be satisfied through conjecture. In *Holt*, the Court rejected prison officials' speculative security concerns and required proof that less restrictive alternatives would not suffice. 574 U.S. at 364–65. In *United States v. Playboy Entertainment Group, Inc.*, the Court made clear that

when a plausible less restrictive alternative exists, the government must prove the alternative would be ineffective. 529 U.S. 803, 822 (2000). And in *Ashcroft v. ACLU*, the Court reiterated that the government bears the burden of showing that less restrictive alternatives are inadequate. 542 U.S. 656, 666 (2004).

The government made no such showing here. It argued that supervision might require "embedding a probation officer" within the church community and that attendance could not be effectively monitored. *See* Gov't Resp. to RFRA Mot. at 10–12, Doc. 113. But it offered no testimony or declaration from probation or anyone else to support that assertion. The district court nonetheless accepted that premise and concluded that the prohibition was the least restrictive means. *See* Order on Conditions of Release at 6–8, Doc. 123; Order Denying Mot. to Amend at 2–4, Doc. 154.

RFRA requires more. By resolving strict scrutiny without evidence and by refusing to allow Appellants to develop the record on alternatives, the district court misapplied RFRA and relieved the government of the burden the statute imposes.

## II. The District Court Improperly Relieved the Government of RFRA's Burden by Accepting Speculation Instead of Requiring Proof That Less Restrictive Alternatives Would Fail.

Once the government conceded sincerity and substantial burden, strict scrutiny applied, and the burden shifted entirely to the government. *Grady*, 18 F.4th at 1285; *Davila*, 777 F.3d at 1205–06.

RFRA's burden-shifting structure matters. Congress enacted RFRA to ensure that courts would not defer to restrictions on religious exercise without requiring the government to prove necessity. *See* 42 U.S.C. § 2000bb(b). The least-restrictive-

means test therefore does not ask whether the claimant has proven an accommodation would work. It asks whether the government has proven that accommodations would fail. *Hobby Lobby*, 573 U.S. at 728; *Holt*, 574 U.S. at 364–65.

The Supreme Court's cases leave no doubt on that point. In *Holt*, the Court required the government to show that it had "actually considered and rejected the efficacy of less restrictive measures." 574 U.S. at 365. In *Playboy*, the Court held that the government must prove that proposed alternatives "will not be as effective as the challenged statute." 529 U.S. at 822. In *O Centro*, the Court rejected generalized governmental assertions and required a focused showing that denying the particular accommodation was necessary. 546 U.S. at 430–32.

The Eleventh Circuit has said the same. Once a substantial burden is shown, the government "must demonstrate that the challenged action satisfies strict scrutiny." *Grady*, 18 F.4th at 1285. It must prove that the restriction imposed is the least restrictive means. *Davila*, 777 F.3d at 1205–06.

But the government offered no proof that narrower alternatives would fail. No witness testified that supervised attendance was unworkable. No witness testified that probation lacked the ability to implement seating restrictions, monitored entry and exit, or no-contact protocols. No witness testified that the existing witness-contact restrictions were inadequate. *See generally* Hr'g Tr. (Oct. 15, 2025). Instead, the government relied on hypothetical concerns about sermons and generalized assertions about administrative burden. *See* Gov't Resp. to RFRA Mot. at 10–12, Doc. 113.

More fundamentally, it reverses RFRA's burden. The district court faulted Appellants for not establishing that monitoring church attendance would be feasible. But RFRA does not require the claimant to prove that alternatives will succeed. The government must prove that alternatives will fail. *Grady*, 18 F.4th at 1285; *Davila*, 777 F.3d at 1205–06. By accepting the government's speculation and treating the absence of defense proof as dispositive, the district court improperly relieved the government of its statutory burden.

That error is especially serious in the pretrial-release context. Conditions of release are imposed before conviction and necessarily operate against a background of substantial liberty interests. When such conditions also burden religious exercise, RFRA requires the government to meet a demanding burden with evidence, not conjecture. The government's failure to do so here requires reversal or modification under Rule 9(a).

III. RFRA Requires an Individualized Analysis of Less Restrictive Alternatives, Yet the District Court Upheld a Blanket Prohibition on Religious Participation Without Conducting That Inquiry.

RFRA's least-restrictive-means requirement is inherently individualized. Courts must determine whether the government can accommodate the particular claimants' religious exercise without undermining its compelling interests. *O Centro*, 546 U.S. at 430–32; *Holt*, 574 U.S. at 363–65. Generalized concerns and categorical rules are not enough.

The district court did not conduct the required individualized inquiry. Rather than evaluating whether tailored restrictions could permit Reip, Nostrant, and Labat to attend services while preventing witness contact, the court upheld a blanket

prohibition on all participation in HOPCC services and activities. *See* Doc. 123; Doc. 154. That prohibition rested on generalized concerns that the church community could contain potential witnesses and that sermons or religious messaging might influence them.

But the court never evaluated whether specific safeguards could address those concerns. It did not consider whether Appellants could attend services subject to restrictions on interaction with congregants. It did not consider whether probation could impose entry-and-exit controls, designated seating, or other physical separation measures. It did not consider whether existing no-contact restrictions could be reinforced in a manner tailored to church attendance. *See* Mot. to Amend Conditions of Release at 3–6, Doc. 147.

This failure matters because Appellants specifically identified alternatives. In their motion to amend, they proposed monitored attendance, designated seating arrangements, restrictions on interaction with congregants, probation supervision, and reinforced no-contact protocols. *Id.* Those proposals would have allowed communal worship while preserving the government's interest in preventing witness interference. But because the district court denied a hearing, none of those proposals was tested through evidence.

RFRA does not permit that shortcut. In *Holt*, the Supreme Court rejected a categorical security rationale where the government had not shown why narrower alternatives were insufficient. 574 U.S. at 364–65. In *O Centro*, the Court rejected broad assertions untethered to the claimants' specific circumstances. 546 U.S. at 430–32. And in *Davila*, the Eleventh Circuit emphasized that once a substantial burden is shown, the government must justify the particular restriction imposed. 777 F.3d at 1205–06.

The district court instead treated the mere fact that the church community could include witnesses as sufficient justification for a categorical ban. Courts may not uphold restrictions on constitutional rights based on speculation. See *Otto v. City of Boca Raton*, 981 F.3d 854, 866-868 (11th Cir. 2020). Because the district court failed to conduct the individualized inquiry RFRA requires, the order cannot stand.

## IV. The Bail Reform Act Independently Requires Courts to Impose the Least Restrictive Conditions of Release, and the Blanket Prohibition on Religious Attendance Conflicts with That Requirement.

Even apart from RFRA, the challenged condition conflicts with the BRA. That statute requires a judicial officer to impose "the least restrictive further condition, or combination of conditions," that will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). The Act therefore requires narrow tailoring.

This is important because the district court imposed the broadest possible restriction: a categorical prohibition on attending services at Appellants' church. That restriction directly interferes with communal worship, yet the court never required the government to show that narrower conditions would not work.

Courts routinely address concerns about witness interference through targeted conditions: no-contact orders, communication restrictions, location restrictions, reporting requirements, and supervision by pretrial services. Those are precisely the kinds of measures the BRA contemplates. But here the district court bypassed such options and imposed a complete worship ban. *See* Order on Conditions of Release at 6–8, Doc. 123.

Instead, as with RFRA, the court relied on speculation about possible witness influence through sermons and on unsupported assertions about administrative burden. That is inconsistent with the BRA's requirement that release conditions be the least restrictive necessary.

The interaction between the Bail Reform Act and RFRA is especially telling. Both statutes require courts to ask whether narrower restrictions can adequately protect the government's interests. Both reject unnecessarily broad restraints on liberty. And both are violated when a court imposes the most restrictive condition available without requiring proof that lesser measures would be insufficient.

The district court therefore erred not only under RFRA but also under the Bail Reform Act.

V. The District Court's Prohibition on Attendance at Appellants' Church Raises Serious Free Exercise Clause Concerns.

Although RFRA supplies the primary rule of decision here, the district court's order also raises serious concerns under the Free Exercise Clause of the First Amendment.

The Free Exercise Clause protects religious practice from unnecessary governmental interference. U.S. Const. Amend. I. Communal worship lies at the core of religious exercise, and restrictions on attending services therefore burden one of the most central forms of religious practice.

The Supreme Court has repeatedly held that government actions targeting religious practice must satisfy strict scrutiny. In *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, the Court invalidated ordinances that singled out Santeria religious

practice for special burdens. 508 U.S. 520, 546 (1993). More recently, in *Fulton v. City of Philadelphia*, the Court reaffirmed that government actions interfering with religious exercise in a way that is not neutral or generally applicable are subject to strict scrutiny. 593 U.S. 522, 533–34 (2021).

This case raises related concerns. The district court did not prohibit Appellants from attending gatherings generally. It prohibited them from attending services at a particular church. That church-specific restriction directly targets religious participation at the institution where Appellants worship.

To be sure, the government's asserted interest is not hostility toward religion as such. But constitutional concern arises when the government burdens religious participation itself—especially through a categorical ban—without evidence that the burden is necessary. That is what occurred here.

The transcript also shows concern not merely with physical proximity to congregants, but with the content and possible effect of religious messaging. The government suggested that sermons could imply that "for all practical purposes the federal government is the spawn of satan and no one should cooperate." Hr'g Tr. at 4 (Oct. 15, 2025). The court expressed concern that a sermon about "loyalty" could influence members of the congregation. *Id.* at 5.

Those concerns underscore the constitutional problem. The First Amendment protects religious speech as well as religious exercise. A court cannot suppress attendance at worship because of speculative concern about what might be preached or how listeners might respond unless the government can meet the demanding burden required to justify that restriction. Here it did not.

These Free Exercise concerns do not replace the RFRA analysis; they reinforce it. RFRA was enacted to restore robust protection for religious exercise. The same features that make the order invalid under RFRA—its breadth, its focus on communal worship, its reliance on speculation, and its lack of evidentiary support—also make it constitutionally troubling.

## VI. Rule 9(a) Relief Is Appropriate Because the Existing Record Already Demonstrates That the Government Failed to Satisfy RFRA's Least-Restrictive-Means Requirement.

Federal Rule of Appellate Procedure 9(a) authorizes this Court to review and modify conditions of pretrial release. That authority is particularly important when the challenged condition imposes an ongoing burden on fundamental rights. Here, every week the restriction remains in place, Appellants are prevented from participating in communal worship at their church.

The existing record is already sufficient to show legal error. The government conceded sincerity and substantial burden. *See* Gov't Resp. to RFRA Mot. at 8–9, Doc. 113. Once those concessions were made, the burden shifted to the government to prove least restrictive means. 42 U.S.C. § 2000bb-1(b); *Grady*, 18 F.4th at 1285; *Davila*, 777 F.3d at 1205–06.

The government then failed to produce evidence demonstrating that narrower alternatives would be ineffective. No testimony from probation. No testimony from investigators. No evidence about service structure or supervision. *See generally* Hr'g Tr. (Oct. 15, 2025). Instead, it relied on speculation about sermons and generalized assertions of difficulty. That is not enough under RFRA. *Holt*, 574 U.S. at 364–65; *Playboy*, 529 U.S. at 822; *Ashcroft*, 542 U.S. at 666.

Appellants then requested a hearing to develop the record on alternatives. *See* Mot. to Amend Conditions of Release at 3–6, Doc. 147. The district court refused. *See* Order Denying Mot. to Amend at 2–4, Doc. 154.

Because the district court resolved strict scrutiny without evidence and without requiring the government to carry its burden, Rule 9(a) relief is warranted. At minimum, the order should be vacated and remanded for an evidentiary hearing. But because the government's failure of proof is already clear, this Court may also modify the condition directly.

## VII. A Narrowly Tailored Modification of the Release Conditions Can Protect the Government's Interests While Permitting Religious Worship.

If this Court concludes that direct modification is appropriate, narrower conditions can protect the government's interests without imposing a categorical ban on worship.

The BRA contemplates targeted conditions tailored to the specific risks at issue. 18 U.S.C. § 3142(c)(1)(B). Appellants have already proposed multiple safeguards that would allow attendance at HOPCC services while protecting potential witnesses. *See* Doc. 147.

For example, the Court could permit attendance subject to conditions such as these:

1. Appellants shall not initiate or engage in direct or indirect contact with any known potential witness except through counsel.
2. Appellants shall not discuss the criminal case with any member of the congregation or any attendee at HOPCC services.

3. Appellants shall comply with seating or attendance restrictions imposed by the United States Probation Office to minimize interaction with congregants.

4. Appellants shall enter and exit services in a manner directed by the United States Probation Office to minimize contact with congregants.

5. Appellants shall remain subject to all existing witness-contact prohibitions.

These conditions are precisely the kind of targeted safeguards the Bail Reform Act contemplates. They address the government's stated concerns while avoiding the extraordinary burden of a complete prohibition on communal worship.

Nothing in the existing record demonstrates that such safeguards would be ineffective. The government presented no testimony that supervision would be impossible and no evidence that church attendance had already resulted in intimidation or obstruction. *See generally* Hr'g Tr. (Oct. 15, 2025).

RFRA requires the government to prove that it lacks other means of achieving its interests without imposing the burden on religious exercise. *Hobby Lobby*, 573 U.S. at 728. Because the government made no such showing, a categorical prohibition cannot stand. A narrower, properly tailored modification is both lawful and feasible.

Respectfully submitted this 13th day of March 2026.

*/s/ Charles Hackney Rollins*
Charles Hackney Rollins
Georgia Bar No. 367169
*Attorney for David Reip*

CHARLES ROLLINS, PC

1450 Green St.

Suite 3600

Augusta, GA  30901

Telephone: 706-814-2361

charles@rollinspc.org


*/s/ Brooks K. Hudson*

Brooks K. Hudson

GA Bar No. 141621

*Attorney for Marcus Labat*


Of Counsel:

Hull Barrett, PC

Post Office Box 1564

Augusta, GA 30903

706-722-4481

bhudson@hullbarrett.com

*/s/ Holly G. Chapman*

Holly G. Chapman

GA Bar No. 512067

*Attorney for Dennis Nostrant*


Davis, Chapman, and Wilder, LLC

1143 Laney Walker Blvd, Suite 201

Augusta, GA 30901

706-200-1578

hchapman@dcwattorneys.com

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

CASE NO**: 26-10594**

UNITED STATES OF AMERICA,

v.

DAVID REIP, DENNIS NOSTRANT, and MARCUS LABAT

Defendants.

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with Fed. R. App. P. 27(d)(2) because it contains 5190 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font**.**

This 13th day of March, 2026.

**CHARLES ROLLINS, P.C.**

*/s/ Charles Hackney Rollins*
CHARLES HACKNEY ROLLINS
Georgia Bar No. 367169

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

CASE NO**: 26-10594**

UNITED STATES OF AMERICA,

v.

DAVID REIP, DENNIS NOSTRANT, and MARCUS LABAT

Defendants.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing with this Court.

This 13th day of March, 2026.

**CHARLES ROLLINS, P.C.**

*/s/ Charles Hackney Rollins*
CHARLES HACKNEY ROLLINS
Georgia Bar No. 367169