**IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**UNITED STATES OF AMERICA**,

Plaintiff-Appellee,

v.                                                   **No. 26-10594**

**DAVID REIP
DENNIS NOSTRANT
MARCUS LABAT**

Defendants-Appellants.

**GOVERNMENT'S RESPONSE TO DEFENDANTS'
EMGERGENCY MOTION TO MODIFY CONDITIONS OF RELEASE**

David Reip, Dennis Nostrant and Marcus Labat appeal the district

court's denial of their 18 U.S.C. § 3145(a)(2) motion to amend pretrial release

condition 7(g), which requires them to avoid all contact, directly or indirectly,

with any person who is or may be a victim or witness in the investigation and

prosecution of their case, so that they may attend religious services at the

House of Prayer Christian Churches ("HOPCC").

HOPCC is the epicenter of the criminal activity charged in the

Indictment.  The district court correctly determined that to allow any

Defendant to attend HOPCC services, even with various restrictions imposed,

carries an unacceptable risk of witness and victim intimidation.  Moreover,

the United States Probation Office does not have the resources to monitor each released Defendant's attendance at HOPCC services.

Condition 7(g) does not prohibit the Defendants from watching HOPCC church services remotely from any livestream or recording or, if they desire, attending services at churches that have no affiliation with HOPCC. Condition 7(g) does not violate Defendants' rights under the Religious Freedom Restoration Act ("RFRA") because it is the least restrictive means of protecting the Government's compelling interests in safeguarding potential witnesses and the fair administration of justice. The Magistrate Judge's concern about safeguarding these compelling government interests through Condition 7(g) were heightened because two uncharged HOPCC members brought covert recording devices into the Magistrate's courtroom during the Defendants' and four co-defendants' initial appearance and at least one of those HOPCC members (Jeff Derby) secretly recorded the proceedings until the Magistrate Judge, at the Government's request, conducted an inquiry, discovered the activity, and seized the recording devices from Derby and another HOPCC member.

Contrary to the Defendants' assertions, the district court did not categorically prohibit Defendants from attending religious services without

analyzing each Defendant individually.  The district court considered all three Defendants individually and correctly concluded Condition 7(g) is the least restrictive means of furthering the Government's compelling interests.  Accordingly, this Court should deny Defendants' motion.

## A.    Factual and Procedural History.

### 1.    Indictment.

On September 4, 2025, a grand jury indicted Reip, Nostrant, Labat ("Defendants") and five co-defendants on fraud offenses stemming from their involvement with the House of Prayer Christian Churches of America ("HOPCC") and House of Prayer Bible Seminary ("HOPBS").  (Doc. 3.)[1]  The indictment alleges that Reip, Nostrant Labat and the other five co-defendants "exercised extreme control and manipulation over other members of the HOPCC and attendees of HOPCC."  (Doc. 3 at 4.)  Reip and Nostrant are charged in Count One with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1344(2) and 1349, and in Counts Two and Three with Bank Fraud, in violation of 18 U.S.C. 1344(2).  The alleged bank fraud scheme involved church leaders using HOPCC members as straw buyers of real

---

[1] "Doc." refers to the district court's ECF docket in Case No. 1:25-CR-00062 (S.D. Ga.).

property.  (See id. at 7-22.)  Labat is charged in Count Four with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1343 and 1349, and in Counts 8 through 23 with Wire Fraud, in violation of 18 U.S.C. § 1343.  The alleged wire fraud scheme involved the recruitment of veteran HOPCC members into the HOPBS.  (See id. at 23-27, 29.)  All Defendants are members of and "volunteer minister[s]" at the HOPCC.  (Id. at 2-3.)

> 2.  Initial Appearance; Two HOPCC Members Brought Covert Recording Devices into the Magistrate Courtroom and at least one HOPCC Member Secretly Recorded Part of the Proceedings.

On September 11, 2025, United States Magistrate Judge Brian K. Epps ("MJ" frequently herein) held Defendants' initial appearances and released each of them on a $50,000 unsecured bond.  (Docs. 15-23.)  The Government alerted Magistrate Judge Epps that there were six HOPCC members in the courtroom who may have misled court personnel into believing they were personnel of defense attorneys and who may have been covertly recording the proceedings.  (Doc. 167 at 62-64.)  After they were placed under oath, the Court conducted an inquiry of the three women (Karina Acosta, Sarah Derby, Priscilla Bercini) who had been seated at defense counsel table and the three men (Jeff Derby, Randy Bercini, James Benton) seated directly behind them.

(Id. at 65-74.)  All initially denied possessing a recording device.  (Id. at 67.)

Mr. Derby subsequently admitted bringing a device into the courtroom and

covertly recording the proceedings.  (Id. at 68-70.)  The Court observed,

"[t]hat is the kind of device that you bring where you don't want people to

understand that you're recording so they don't see that you're recording

something."  (Id. at 70.)  The Court stated:

> I am just taking a minute for this to sink in – the importance of
> where we are and what has just occurred – and I want the six of
> you to understand that this is just the beginning of this inquiry and
> not the end of it, and I want everybody in this room from each
> defendant to everybody who is here attending this critically
> important proceeding and that the federal judiciary will not be
> tampered with, interfered with, or misrepresented to, and the
> consequences of engaging in such conduct will be severe.  And that
> recording device that you brought here will not leave with you.  It
> shall stay.

(Id. at 72.)  Mr. Derby's actions heightened the Court's concerns about

witness intimidation and harassment and the administration of justice:

> I do think there is one other thing we ought to talk about before we
> leave.  I talked about the importance earlier about these defendants
> understanding that as you go out on bond you are not to have any
> conversation with a co-defendant or anybody who is a likely witness
> at the trial of this case, and given the behavior that we've seen here
> today, I want y'all to make – to be absolutely sure you understand
> the critical importance of that.
>
> The very foundation of our judicial system is the ability of a witness

to walk into court, be sworn under oath, and to tell the truth without fear of any adverse consequences or repercussions, and so any attempt to interfere with them, to harass them, to intimidate them, to affect the substance of their testimony is something that you … would understand is treated very seriously . . .

(Id. at 73-74.)  When the Court inquired if any of the three women (Mrs. Bercini, Mrs. Derby, Ms. Acosta) or men (Bercini, Benton, Derby) had represented themselves to a court security officer that they were legal staff, each denied it.  One of the men (identified in the transcript as "Unidentified Male Speaker") explained that Mr. Bercini had "mentioned us as staff simply because we serve Mr. Denis in the church and others in different positions … It had nothing to do with legal."  (Id. at 83.)  One of the men (identified in the transcript as "Unidentified Male Speaker") then announced,

> Your Honor, Mr. Derby – when he came in he gave me this.  I did not know it was a recording device.  He simply gave me a pen.  I did not want to make an issue of it, but this – I did not know this was a recording device.  He gave it to me when he came in the Court.
>
> ***
> It is a pen.  I have no intention – I don't know if it's on, off.  I had no intention of recording anything, Your Honor.  I didn't want to – he gave it to me.  I don't want to complicate everything.  I am not trying to record anything.  I don't know if it's on or off.

(Id. at 84.)  The Magistrate Judge seized the device and asked "[a]nybody else got a pen on them – that someone asked them to carry in the courtroom

today?"  (Id at 85.)  The Magistrate Judge adjourned by observing,

> [m]y God, people.  And the explanations you've given me today about this reek of dishonesty.  So you need to buckle up and do better next time … You're lucky you're leaving here today.

(Id. at 85.)

    *3.*    <u>Condition 7(g).</u>

Bond Condition 7(g) provides Defendants must "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including co-defendants, unless arranged by and in the presence of counsel."  (<u>See, e.g.</u>, Doc. 15 at 1.)  At arraignment on September 23, 2025, each Defendant requested clarification concerning whether condition 7(g) permitted them to attend services and other events at various HOPCC branches, as their attendance would require them to be around other HOPCC members.  (Doc. 105, p. 3.)  Magistrate Judge Epps recognized that "it is very difficult to do this on a generalized basis" and instructed the government to meet with counsel for each defendant regarding their Condition 7(g) clarification requests.  (Doc. 167 at 21.)  The Defendants submitted their respective proposals to the Government, the Government considered those proposals; however, the parties were unable to reach an agreement. (Doc. 105, at 3; Doc. 123, at 2.)

*4.*    Magistrate Court's Status Conference.

On October 15, 2025, Magistrate Judge Epps held a status conference and heard each Defendant's proposed modification to Condition 7(g).  (Doc. 168 at 13, 15, 18-26; Doc. 98.)  When Reip's counsel proposed requiring a U.S. Probation Officer to attend in-person services, this colloquy occurred:

> The Court: No, … that's one thing I won't do.  We don't have [the] bandwidth to manage and monitor defendants in that way.  It's just not possible."
>
> Reip's Counsel: I understand your position.
>
> The Court: It's not a position.  It's just the reality. It really is.

(Id. at 24-25.)

The Government emphasized that the "difficulty in this case is that the church is the loc[us] of the criminal conduct."  (Id. at 29.)  The Government also told the Court it was receiving information on a regular basis that properties acquired in furtherance of the bank fraud scheme and placed in the name of LLCs years ago were now being transferred back into the names of people attending HOPCC.  (Id. at 30-33.)  The Government expressed concern because these recent transfers could subject victim-witnesses to influence and coercion.  (Id.)

The Court orally ruled on the Defendants' proposals to attend services:

I've listened very carefully to every remark that has been made here today and I've been thinking about this for two weeks and walking in here today I really didn't have a clear thought either way, but this has been an extremely informative conversation and what I've heard several defense lawyers say is that we don't know who a witness is. They're all potential witnesses and we don't know – when we sit next to somebody in a pew whether we're talking to someone who is going to testify against me at trial. … And it may be today they're not, but tomorrow they will and several of the lawyers said, "I'm uncomfortable with them being at the church because I don't want there to be a violation intentional or unintentional," and I just – the more we sit here and the more I hear everybody talk, the more I think the best thing for everybody involved is for there to be no church attendance, and I don't say that lightly.

I have been thinking about this and worrying about this. And I'm a religious person. I try to attend church every Sunday, and I … tell my kids all the time it's not enough for you to sit on your couch and watch the service. You need to be there. To me that's true worship and it's very important to me, but I'm also a Judge and I also have to make sure that this case when it gets to trial and jury is struck that a fair trial is conducted for everyone involved and I don't have that reasonable assurance of that occurring here given the allegations and the amount of influence the government alleges these defendants have over these people and I don't feel comfortable allowing y'all to attend church until trial of this case. I just don't.

****

… I don't have a comfort with anybody going to the church and working in any capacity either. I just don't because any time you're there you're going to have that same potential for a conversation that should not take place and we can't police that. We just don't have the manpower to do it.

Now I am very concerned that I not overstep my authority and so in seven days if the defense counsel … want to take a look at the case law and then give me a brief that outlines if there are any

limitations in this regard . . . .

> So what we'll do is leave here with the iron clad rule that you cannot attend church because of the great likelihood that you're going to have a conversation with a potential witness who is going to testify at trial and subject to that briefing I may change my mind if I see case law that suggests I don't have the authority to do that.

(Id. at 34-37.)

The Magistrate Judge's oral ruling prohibiting the Defendants attendance at, participation in, any activities, services, gatherings or events associated with HOPCC was memorialized in a written Order on October 15, 2025. The Order states in part,

> [a]s the Court explained in detail at the hearing, any lesser restrictions will not reasonably assure compliance with the prohibition of communication with potential witnesses or the protection of potential witnesses against improper influence, coercion, or intimidation.  The Court has a compelling interest to impose this prohibition for the purpose of ensuring adequate protection of potential witnesses and the orderly and fair administration of justice.  However, Defendants may watch church services remotely from any livestream or recording ….

(Doc. 98.)

> 5. <u>Defendants' Joint Motion in Support of Modifying Condition 7(g) and the Government's Response.</u>

On October 22, 2025, the Defendants filed a motion seeking modification of the Court's prohibition on their ability to attend HOPCC-

related events and services.  (Doc. 105.)  Defendants acknowledged that

safeguarding potential witnesses and the fair administration of justice are

compelling government interests and that conditions "exactly like or

extremely similar to those imposed in [Condition] 7(g)" are not unusual.

(Doc. 105 at 4.)

On November 4, 2025, the Government filed a response.  (Doc. 113.)

The Government stated it "had and continues to have contact from present

[HOPCC] members who are … potential witnesses and/or victims and who

have provided information relevant to the schemes."  (Id.)  The Government

explained that the U.S. Probation Office lacked the capacity to attend in-

person worship proceedings to enforce no-contact limitations.  (Id. at 5.)  The

Government's response also explained:

> [O]n or about the date of the initial appearances of these defendants – a confidential source provided pictures of at least three defendants together at the Dairy Queen in Hinesville, Georgia.  This would have been after receiving instruction from the Court and Probation about the no-contact provision of the release order.  This merely demonstrates that the defendants from the outset did not take seriously the Court's directive of no contact.

(Id.)

*6.*    Magistrate Judge's November 25, 2025 Order Denying the Defendants' Motion to Modify Condition 7(g).

In denying the Defendants' motion, Magistrate Judge Epps explained,

[a]t the October 15th status conference, the Court heard from defense counsel concerning each Defendant's proposal for attending church events and concluded the only way to accomplish the compelling interest in protecting witnesses and fairly administering justice was to prohibit each Defendant's in-person attendance entirely. (Docs. 96, 98.) The unique circumstances of this case demand this conclusion because (1) the nucleus of the schemes is the church itself; (2) all current and former church members are appropriately considered potential witnesses, and many of them are alleged victims; (3) the indictment alleges Defendants "exercised extreme control and manipulation over other members of the HOPCC and attendees of the HOPBS," (doc. no. 3, p. 5.); (4) any unmonitored communication between a Defendant and a current or former church member carries and unacceptably high risk of coercion or intimidation; and (5) the U.S. Probation Office does not have the resources to monitor every such conversation to assure the protection of victims and witnesses.

In light of these particular circumstances, prohibiting each Defendant's in-person attendance at HOPCC events is the least restrictive means of furthering the compelling interests at stake. This conclusion applies equally to Defendants Reip, Nostrant, Robertson, and Labat after consideration of each Defendant's alleged role in the conspiracy, role in the church, and proposal for participation in church events. As the Court remarked at the status conference, Defendants may observe HOPCC events online and, if they so desire, attend services at churches that have no affiliation with HOPCC. No less restrictive alternatives will achieve the government's compelling interests.

(Doc. 123 at 4-5.)

*7.*    District Court's Order Denying the Defendants' Motion to Amend Condition 7(g) and the Magistrate Judge's Related October 15, 2025 Order.

On January 28, 2026, pursuant to 18 U.S.C. § 3145(a)(2), Defendants filed a motion to amend conditions of their bail release and the MJ's Order, alleging a violation of the RFRA. (Doc. 147.) On February 4, 2026, the Government filed a response. (Doc. 151.) On February 11, 2026, after conducting a *de novo* review, the district court issued an Order denying their motion. The Court ruled,

> [a] hearing is unnecessary because the record developed in connection with Condition 7(g) is sufficient. (see Court's recording system, *For the record* ("FTR") 9:3223-10:20:30 (Oct. 15, 2025; docs. 98, 123.) Next, Condition 7(g) should not be amended for any Defendant.

(Doc. 154 at 1-2.) The district court concluded that the Magistrate Judge did not categorically prohibit Defendants from attending HOPCC services without analyzing each Defendant individually because he heard proposals from each Defendant and the Government, at the October 15, 2025, status conference and considered the Defendants' post-hearing RFRA motion and brief. (Doc. 154 at 2.). After the district court fully considered each individual Defendant, it concluded Condition 7(g) and the Magistrate Judge's Order should not be modified "in light of the specific, unique circumstances" of the

13

bank and wire fraud schemes in this case and because the HOPCC "is the epicenter of the alleged criminal activity" and the indictment alleges the Defendants exercised control and manipulation over HOPCC members to fulfill the alleged schemes.  (Doc. 154 at 2-3.)  The district court held that "to allow any Defendant – Nostrant, Reip, or Labat – to attend HOPCC services, even with various restrictions imposed, carries an unacceptable risk of witness and victim intimidation" and the United States Probation Office "simply does not have the resources to monitor each released Defendant's attendance at HOPCC services."  (Doc. at 3.)  The district court "considered all three Defendants individually but conclude[d] Condition 7(g) is the least restrictive means of furthering the government's compelling interest as to each."  Id.

## B.    Standards of Review.

Cases arising under the Bail Reform Act present mixed questions of law and fact.  See United States v. King, 849 F.2d 485, 487 (11th Cir. 1988) ("we will not disturb the district court's purely factual findings [under the Bail Reform Act] unless such findings are clearly erroneous"); United States v. Hurtado, 779 F.2d 1467, 1472 (11th Cir. 1985) (criteria "pertaining to individual characteristics of the defendant and the threat posed by his release

... are subject to the clearly erroneous standard of review"); <u>Hurtado</u>, 779 F.2d at 1472 (factors in § 3142(c) requiring the trial court "to exercise certain judgment and discretion in applying legal standards to certain facts" present mixed questions of law and fact subject to de novo review).

This Court reviews whether government action comports with the Religious Freedom Restoration Act de novo. <u>See</u> <u>United States v. Grady</u>, 18 F.4th 1275, 1285 (11th Cir. 2021).

**C.    Argument.**

*1.*    <u>The District Court Correctly Ruled That Condition 7(g) Does Not Violate Defendant's RFRA Rights.</u>

The Magistrate Judge recognized that "[t]he least-restrictive-means standard is exceptionally demanding" and that "in order to be a viable least-restrictive means for purposes of RFRA, the proposed alternative need[s] to accommodate both the religious exercise practiced and simultaneously achieve the government's compelling interests." (Doc. 123 at 4) (cleaned up; quoting <u>Burwell v. Hobby Lobby Stores, Inc.</u>, 573 U.S. 682, 728 (2014); <u>Grady</u>, 18 F.4th at 1287)).  The MJ then applied this exacting standard to the factual circumstances present here.  (<u>Id.</u> at 4-5.)  The court's thoughtful analysis withstands Defendants' criticisms.

In sum, the court correctly recognized the Government has a compelling

interest in protecting victims and witnesses and in the fair administration of justice—which Defendants have never disputed. (Doc. 123 at 4.) Because of the unique circumstances of this case, "prohibiting each Defendant's in-person attendance at HOPCC events is the least restrictive means of furthering the compelling interests at stake." (Doc. 123 at 5.) The MJ supported his conclusion with several subsidiary findings, including: (1) the nucleus or hub of the schemes is the church itself; (2) all current and former church members are appropriately considered potential witnesses, with many of them being alleged victims; and (3) and U.S. Probation Office lacks the resources to monitor every conversation between Defendants and other church attendees to assure the protection of victims and witnesses. (Id. at 4-5.)

    *2.*     <u>Defendants' Challenges to the District Court's Ruling Are Unavailing.</u>

Here, Defendants' attacks on the district court's ruling are unavailing. Defendants repeatedly challenge the Magistrate Judge's failure to conduct an evidentiary hearing—arguing at length that the Magistrate Judge based his decision on conjecture and speculation rather than evidence. Defendants' characterization of the record is misleading.

16

For one, the Bail Reform Act specifically permits the court to receive evidence via proffer.  See United States v. Garcia, 828 F.2d 667, 669 (11th Cir. 1987).

Second, the Magistrate Judge queried the three Defendants at the October 15, 2025 status hearing (Doc. 96) and heard individually from counsel representing each Defendant at that hearing.  Defendants ignore this inconvenient fact because it does not square with the narrative they advance in this Court.

Third, when the three Defendants filed their motion seeking modification of the Court's prohibition on their ability to attend HOPCC-related events and services, the MJ had already heard extensive testimony about the fraudulent schemes the indicted Defendants orchestrated on unsuspecting church members.  The MJ conducted a lengthy evidentiary hearing on Defendant FNU LNU's (a/k/a Rony Denis) request for release on bond that spanned more than a full day.  (Docs. 43, 68.)  And the MJ conducted a several-hours-long detention hearing concerning Defendant Oloans's request for pretrial release on bond.  (Doc. 47.)  The Government recognizes that the Defendants whose motion is now before this Court were not the focus of these hearings; that said, the Magistrate Judge heard

testimony and received exhibits at these hearings showing all Defendants'
complicity in perpetrating fraud on vulnerable church members—making the
church "the nucleus or hub of" Defendants' scheme. (Doc. 123 at 4.) And as
the Magistrate Judge correctly recognized, this reality means "all current and
former church members are appropriately considered potential witnesses,
[with] many of them [being] alleged victims[.]" Id. When the MJ determined
weeks later—in response to the motion for modification of release conditions
filed by Defendants—that another evidentiary hearing was unnecessary, he
possessed a keen understanding of the church's role as the epicenter of
Defendants' unlawful conduct and the reason a no-contact provision is of
paramount importance for purposes of protecting the public and safeguarding
a fair trial from improper influence.

Similarly, Defendants' sharp criticism of the district court's decision not
to take testimony from the Court's Probation Officers cannot withstand
scrutiny. The U.S. Probation Office's insufficient resources to monitor every
conversation between Defendants and other HOPCC attendees (Doc. 123 at
5) would fall squarely within the ken of both the Magistrate Judge and
District Judge given their respective roles as judicial officers. Defendants
cite no authority indicating either the Magistrate Judge or the District Judge

18

was required to take testimony on this subject given the circumstances—and the suggestion that an absolute requirement mandated one or both judges to hear such testimony makes little-to-no-sense.  Placing more work on the Probation Office's pretrial services officers—whether by requiring them to testify at evidentiary hearings whenever defendants file weak-RFRA challenges implicating some aspect of these officers' duties, or mandating their attendance at church-related events they would not otherwise attend— would adversely affect other defendants seeking pretrial release.

Finally, although the Government has not located a case that analyzed RFRA's applicability in the context of pretrial supervised-release conditions, there are no shortage of analogous decisions rejecting RFRA-based objections to post-conviction supervised-release conditions.  For example, the Seventh and Ninth Circuits have issued published decisions rejecting convicted defendants' RFRA challenges to supervised-release conditions forbidding the convicted defendants at issue from using marijuana for religious purposes.  See United States v. Lafley, 656 F.3d 936, 942 (9th Cir. 2011); United States v. Israel, 317 F.3d 768, 772 (7th Cir. 2003).  In each case, the circuit court either acknowledged or assumed the defendant had satisfied his RFRA prima

19

facia case of showing a government policy that posed a substantial burden on the defendant's religious exercise.  See Lafley, 656 F.3d at 940; Israel, 317 F.3d at 771.  But in each case, the circuit court upheld the government policy under the least-restrictive-means-of-furthering-the-government's-compelling-interest(s) test because, in part, of limitations on the respective probation offices that would be exacerbated if ad hoc judicial exceptions were recognized.  See Israel, 317 F.3d at 772 ("Any judicial attempt to carve out a religious exemption in this situation would lead to significant administrative problems for the probation office and open the door to a weed-like proliferation of claims for religious exemptions.") (citation omitted); Lafley, 656 F.3d at 942 ("Requiring continuous monitoring of Lafley's marijuana use to determine whether the use was recreational or religious would place an unreasonable burden on a probation office."); see also United States v. Tinoco, 730 F. App'x 581, 587 (10th Cir. 2018) (similar).  Here, the district court's consideration of limitations on the finite capabilities of its pretrial services officers was appropriate, and its ruling should stand.[2]

---

[2] Because Defendants' RFRA challenges to the court's supervised-release

## D.    Conclusion.

Defendants' emergency motion should be denied.

Respectfully submitted,

MARGARET E. HEAP
UNITED STATES ATTORNEY

**/s/ *Patricia G. Rhodes***
Patricia G. Rhodes
Assistant United States Attorney
Georgia Bar No. 307288
*patricia.rhodes@usdoj.gov*
Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422

**/s/ *Michael N. Loebl***
Michael N. Loebl
Assistant United States Attorney
Georgia Bar No. 455709
*michael.loebl@usdoj.gov*
Post Office Box 2017
Augusta, Georgia 30903
Telephone Number: 706-826-4531

**/s/ *George J.C. Jacobs, III***
George J.C. Jacobs, III
Assistant United States Attorney
District of Columbia Bar No. 419016
*George.j.c.jacobs@usdoj.gov*
Post Office Box 2017

---

conditions fail, any challenges Defendants purport to mount under the Bail Reform Act necessarily fail.  The Government thus limits its discussion of the BRA in the interest of judicial economy.

Augusta, Georgia 30903
Telephone Number: 706-724-0517

## CERTIFICATE OF COMPLIANCE AND SERVICE

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

This response complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 4,636 words.

This response was filed today through this Court's ECF system, and thereby served on appellants: David Reip's  counsel of record Charles H. Rollins, Dennis Nostrant's counsel of record Holly Grace Chapman, and Marcus Labat's counsel of record Brooks K. Hudson, at their Court-registered e-mail addresses, pursuant to Fed. R. App. P. 25(c)(1)(C) and 25(c)(2), and 11th Cir. R. 25-3(a).

This 26th day of March, 2026.

> Respectfully submitted,
>
> MARGARET E. HEAP
> UNITED STATES ATTORNEY
>
> */s/ Patricia G. Rhodes*
> Patricia G. Rhodes
> Assistant United States Attorney